Filed 9/22/21  Sanford v. McMurray CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MELISSA SANFORD et al., | B307435 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC628284) |
| v. | |
| KENDEL HERM MCMURRAY et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rupert A. Byrdsong, Judge.  Affirmed.

DorenfeldLaw, David Dorenfeld and Mazyar H. Mazarei for Plaintiffs and Appellants.

DKM Law Group, Robert S. McLay, Joshua N. Kastan and Jessica J. Ross for Defendant and Respondent USAA Casualty Insurance Company.

Mokri Vanis & Jones, Todd A. Jones and Marcia E. Cook for Defendant and Respondent Kendel Herm McMurray.

Melissa Sanford and Jason Burks (appellants) appeal from the trial court's order denying their motions to set aside the dismissal of this lawsuit, which appellants filed in 2016 against USAA Casualty Insurance Company (USAA) and Kendel Herm McMurray doing business as K-Mac Construction (K-Mac) (collectively respondents).  The trial court denied appellants' motions on the ground that the case had been dismissed three years earlier and the equities weighed in favor of the respondents due to the passage of time.  We find no abuse of discretion by the trial court and affirm the court's order.

## BACKGROUND

### The fire and initial insurance payments

This case stems from a residential fire that occurred November 3, 2014, and destroyed appellants' home.  Appellants had hired K-Mac to re-roof the property on September 20, 2014, and they believed that K-Mac's workers caused the fire.[1]  At the

---

[1]     Appellants' opening brief violates California Rules of Court, rule 8.204(a)(1)(C), which requires a party to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."  Instead of citing a precise page number for each fact stated in their opening brief appellants have cited their entire declarations to support each separate point—for a total of nearly 370 pages cited for each fact stated.  This court is not required to parse through "block page reference[s]" such as those offered by appellants in order to find the relevant supporting factual information.  (*Bernard v. Hartford Fire Ins. Co.* (1991) 226 Cal.App.3d 1203, 1205.)  Appropriate reference to the record includes "providing exact page citations."  (*Ibid.*)  We therefore rely mainly on the factual summaries provided by respondents.

time of the loss appellants' property was insured under a homeowner's insurance policy issued by USAA.

USAA investigated the claim. After making several upward adjustments in its estimation of the fire damages at the property, USAA paid appellants more than $870,000 in various types of benefits under the policy.

**Appellants' complaint**

On or about April 14, 2016, appellants retained the services of Glenn T. Rosen (Rosen) of the Rosen Law Firm, A Professional Corporation, to represent them against respondents.

On July 25, 2016, Rosen filed a complaint on appellants' behalf against respondents stating claims for (1) breach of construction contract, (2) negligence, (3) breach of insurance contract, and (4) breach of the implied covenant of good faith and fair dealing (the USAA lawsuit).

**USAA discovery and terminating sanctions**

On September 19, 2016, USAA served initial written discovery requests on appellants. On September 28, 2016, appellants received copies of these discovery requests from Rosen's assistant. Appellants informed Rosen that they could not respond within 30 days. Rosen responded that he could get an extension of time. USAA granted four separate extensions of time through December 27, 2016.

On January 12, 2017, USAA filed a motion to compel discovery against appellants. On March 15, 2017, the trial court granted the motion and ordered appellants to respond to the discovery requests within 20 days.

Appellants failed comply with the court's order. On April 21, 2017, USAA filed a motion for terminating sanctions seeking dismissal of the matter due to appellants' failure to

3

participate in the discovery process. On July 11, 2017, the trial court granted the motion and dismissed the case without prejudice.

**K-Mac discovery and terminating sanctions**

On October 3, 2016, K-Mac served initial written discovery on appellants. The responses were due on November 7, 2016. K-Mac met and conferred with appellants' counsel and after a series of requests for extensions, granted appellants additional time to complete the responses through December 27, 2016. Appellants never returned the discovery.

K-Mac filed motions to compel discovery on January 24, 2017, and on April 13, 2017. These motions were granted on March 15, 2017, and May 15, 2017, respectively. Appellants were ordered to provide code compliant responses within 10 days and pay monetary sanctions. Appellants nevertheless failed to provide discovery responses.

On June 5, 2017, K-Mac filed a motion for terminating sanctions. On July 3, 2017, K-Mac's motion was granted, and the case was dismissed as to K-Mac.

**Appellants' motions to set aside and/or vacate dismissal**

On March 9, 2020, nearly three years after their complaint was dismissed against both respondents, appellants filed motions to vacate and/or set aside the dismissal against each respondent.

According to appellants' declarations filed in the trial court, appellants were in communication with their counsel intermittently throughout early 2017. On July 10, 2017, appellants' counsel sent them an e-mail stating that he had never received their signed verifications for the USAA discovery. Appellants forwarded their attorney the signed verifications within an hour. This was the last communication they had with

4

their attorney regarding discovery. They next communicated with him nearly seven months later, on January 23, 2018, when Burks asked counsel what dates they would have to take off of work for the trial. Their counsel responded that the trial date was "delayed."

Appellants next sought information regarding the status of the case 16 months later, on May 16, 2019. Their counsel responded, "It's coming along slowly. They're considering depositions over the summer. Do you have travel plans?"

On December 19, 2019, Burks attested that he asked a colleague to search for his name in the court records. It was then he first discovered that a judgment had been entered against appellants in a separate case in which they were represented by the same counsel (*Eden Development & Consulting Inc. v. Sanford* (Super. Ct. L.A. County, No. BC707260) (*Eden* case). Appellants hired a new attorney to advise them in the *Eden* case and to determine what had occurred in this case.

Ten days later, on December 28, 2019, appellants first learned through their newly retained counsel that this matter had been dismissed for failure to respond to discovery. The two motions to vacate and/or set aside the dismissal in this matter were filed more than 10 weeks later.[2]

**The trial court's ruling**

The matter was heard via telephonic proceedings on July 6, 2020. Following lengthy proceedings the court noted that it was a "close call," but the court was "convinced" that appellants'

---

[2] Respondents point out that appellants filed an identical motion in the *Eden* matter within just 12 days of learning of the dismissal. However, respondents provide a citation to an illegible document in the record as support for this fact.

5

remedy was a malpractice action against their former attorney, Rosen. The court noted that because appellants had retained the same counsel in the *Eden* case, they were in communication with him. The court expressed concern with appellants' failure to follow up with Rosen under the circumstances:

> "So you're saying, . . . when they retained Rosen for this other case [(the *Eden* case)], at some point in time, they would say, hey, by the way, what's going on with getting our house fixed, what's going on with that case? And the assumption is they had the opportunity to talk about it. They didn't. Nothing happened. It wasn't like he was unavailable and everybody kind of just sat on their . . . bottoms while the case was just wallowing in purgatory; am I correct?"

The court noted that the "equities" "pivot[ed] back to the defense because of the passage of time, because of the [c]ourt's interpretation and perspective about laches and prejudice." The court denied both motions to set aside the dismissal.[3]

---

[3] Appellants attempt to characterize the trial court's decision as based solely on the court's thought that appellant had an alternative avenue to address the claim in the form of a professional negligence claim against Rosen. A review of the record and the court's articulation of its reasoning undermines this narrow characterization of the court's decision. The court heard lengthy argument and made its decision based on a weighing of the equities involved. At no time did the court assume that appellants had a valid and timely claim against Rosen. The court did note that such an action was the appropriate recourse, but made no legal analysis of the timeliness or validity of such a claim. Under the circumstances, we decline to discuss this claim of error further.

On September 4, 2020, appellants filed their notice of appeal from the order after judgment.

## DISCUSSION

### I. Applicable law and standard of review

Appellants challenge the trial court's order on two grounds. First, they assert that they were entitled to relief under Code of Civil Procedure section 473 (section 473). Alternatively, appellants assert that they are entitled to relief on the equitable ground of extrinsic fraud or mistake.

Section 473 permits a court, "upon any terms as may be just, [to] relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." (§ 473, subd. (b).) The provisions of section 473 should be liberally construed so that lawsuits are determined on their merits and one party is not able to take advantage of another party's excusable mistakes or errors. (*Riskin v. Towers* (1944) 24 Cal.2d 274, 279.) A trial court has "'"wide discretion"'" to grant relief under this statute. (*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1111.) The moving party bears the burden of showing a right to relief. (*Austin v. Los Angeles Unified School Dist.* (2016) 244 Cal.App.4th 918, 928 (*Austin*).)

Section 473 expressly provides that an application for relief pursuant to this section "shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken." (§ 473, subd. (b).) Thus, if more than six months have passed since the entry of judgment, relief under section 473 is unavailable. (*Rappleyea v. Campbell* (1994)

7

8 Cal.4th 975, 980 (*Rappleyea*).) "This six-month time limitation is jurisdictional; the court has no power to grant relief under section 473 once the time has lapsed." (*Austin, supra*, 244 Cal.App.4th at p. 928.) Thus, a party seeking relief under section 473 must show two elements: (1) its own mistake, inadvertence, surprise, or excusable neglect; and (2) that the motion was made within six months from the date of dismissal. (§ 473, subd. (b).)

However, after six months, a trial court may still vacate a judgment on equitable grounds even if statutory relief is unavailable. (*Rappleyea, supra*, 8 Cal.4th at p. 981.) Such relief is available "when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits." (*Ibid.*) The party seeking to set aside the judgment must still present a satisfactory excuse for his or her need for relief and must demonstrate diligence in seeking to set aside the judgment. (*Id.* at p. 982.) After six months from the date of the final judgment, "'there is a strong public policy in favor of the finality of judgments and only in exceptional circumstances should relief be granted.'" (*Id.* at pp. 981-982.)

The standard of review under both theories is abuse of discretion. (*Rappleyea, supra,* 8 Cal.4th at p. 981 ["We review a challenge to a trial court's order denying a motion to vacate a default on equitable grounds as we would a decision under section 473: for an abuse of discretion."].) Under this standard, the appropriate test is "'whether the trial court exceeded the bounds of reason.'" (*Austin, supra,* 244 Cal.App.4th at p. 929.)

## II.     The motion for relief under section 473 was properly denied

Section 473 requires that the motion for relief be made "within a reasonable time, in no case exceeding six months, after

8

the judgment, dismissal, order, or proceeding was taken." (§ 473, subd. (b).) This time limit is jurisdictional. (*Austin, supra*, 244 Cal.App.4th at p. 928.) Appellants' case against respondents was dismissed without prejudice as to USAA on July 11, 2017, and as to K-Mac on July 3, 2017. Appellants' motions to vacate the dismissals were not filed until March 9, 2020, more than two and a half years after the dismissals. Therefore, relief was not available to appellants under section 473.

Even if the six-month time period had not passed, appellants were still required to show that their conduct could be described as inadvertence or excusable neglect. (§ 473, subd. (b).) "A party seeking discretionary relief on the ground of attorney error must demonstrate that the error was excusable, since the attorney's negligence is imputed to the client." (*Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1419.) Thus, "'[t]he inexcusable neglect of an attorney is usually not a proper basis for granting the client's motion under section 473.'" (*Ibid.*) Instead, "[t]he client's redress for inexcusable neglect by counsel is, of course, an action for malpractice." (*Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 898.)

The record shows that long periods of time passed during which appellants neglected to inquire about the status of the case with their attorney. For example, over six months passed between July 10, 2017, when Rosen reached out to appellants for their signed verifications, and January 23, 2018, when appellants next inquired about the case. Sixteen months then passed until appellants next inquired about the case in May 2019. Seven months later, in December 2019, appellants discovered that the matter had been dismissed in June 2017. Even if appellants' motion for relief had been timely filed, the trial court acted

9

within its discretion in determining that such actions were not excusable neglect. This is particularly so because, as the trial court noted, appellants had hired the same attorney to prosecute the *Eden* case and were in communication with him about that matter.

In sum appellants failed to establish the two elements required to prevail on a motion for relief pursuant to section 473. The motion was properly denied.

## III. No abuse of discretion in denying equitable relief

Appellants ask that we reweigh the equities in this case to determine that they are entitled to relief on the ground of extrinsic fraud or mistake. Appellants argue that such equitable relief is appropriate "when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits." (*Rappleyea, supra*, 8 Cal.4th at p. 981.) Appellants argue that due to the deceitful and negligent acts of Rosen, they were deprived of the chance to present their case and are entitled to relief.

"Where a client is unknowingly deprived of effective representation by counsel the client will not be charged with responsibility for misconduct if the client acts with due diligence in moving for relief after discovering the attorney's neglect and if the other side will not be prejudiced by the delay." (*Aldrich v. San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725, 739 (*Aldrich*).) Our review of the outcome of the trial court's weighing of these factors is confined to a determination of whether the court's decision exceeded the bounds of reason. (*Rappleyea, supra*, 8 Cal.4th at p. 981.)

Whether a party has acted with diligence is a question of fact for the trial court. (*Younessi v. Woolf* (2016) 244 Cal.App.4th

10

1137, 1144-1145.) It is within a trial court's discretion to find that a period of 10 weeks from the date a party discovers its attorney's negligence to the date it files the motion for relief is not sufficient diligence. (*Id.* at p. 1144.) In *Younessi*, the court reprimanded the moving party's attorney: "when he substituted in as plaintiffs' counsel a month later, he still took no action to seek relief from this default. Rather, [he] waited another month and a half for [his colleague] to prepare the brief. Even then, nothing was done for another two weeks when plaintiffs associated in a second attorney. Once the motion for relief from default was prepared, it took another two weeks to file it with this court." (*Id.* at p. 1144.) As *Younessi* shows, it was within the trial court's discretion to view a 10-week delay in seeking relief as unreasonable. We note that, unlike the moving party in *Younessi*, appellants provide no excuse or explanation for the 10-week delay in this matter.

In addition there was evidence that, due to the passage of time and loss of evidence, there would be prejudice to the defendants. USAA's counsel argued to the trial court:

> "USAA would be prejudiced, not only due to the amount of time for the folks that still are employed as employees . . . and [their] own recollection . . . . But very much of it is going to be testimonial, [and] we've submitted a declaration from my client's human resources people that says at least two of the people that have handled this claim have moved onto retirement, so they're not longer under our auspices or control or my client's control to present them as witnesses unless they cooperate."

K-Mac's counsel made a similar argument:

> "And now they want to have a second bite at [the] apple all these years later, and that is highly

11

prejudicial to my client as well as [c]odefendant. And, given the passage of time, you know, there is a huge concern with destruction of evidence in addition to loss of witnesses. I mean, the home is not going to be in the condition it was in . . . 2014. And so it leaves K-Mac to believe that it is going to risk trial based wholly on speculation without any concrete evidence, without witnesses, and that seems not only to be prejudicial but a waste of the [c]ourt's resources."

In reviewing the equities in this case, including the appellants' failure to diligently follow up with their attorney, appellants' failure to promptly file for relief, and the potential for prejudice to the respondents, we decline to find an abuse of discretion on the part of the trial court in denying equitable relief.

## IV. The cases cited by appellants are distinguishable

The cases cited by appellants do not change the result. *Daley v. County of Butte* (1964) 227 Cal.App.2d 380 involved a motion pursuant to section 473 that was brought several weeks after the trial court granted the county's motion to dismiss based on lack of prosecution. (*Daley*, at pp. 386-387.) While the case contains language suggesting that "[c]lients should not be forced to act as hawklike inquisitors of their own counsel, suspicious of every step and quick to switch lawyers," we note that the facts are distinguishable from the case before us. (*Id.* at p. 392.) There the plaintiff made 12 to 15 calls to her lawyer after she became worried about the progress of her case and subsequently became severely ill. (*Id.* at p. 386.) No such extenuating circumstances exist here.

Appellants next cite *Fleming v. Gallegos* (1994) 23 Cal.App.4th 68, another case involving a dismissal for failure to

12

prosecute. (*Id.* at pp. 71-72.) The appeal was a direct appeal from the dismissal under the discretionary dismissal statutes. (Code Civ. Proc., §§ 583.410, 583.420.) Thus, the jurisdictional time limit under section 473 was not considered. Further, the court made it clear that the plaintiff was diligent throughout the case:

> "Fleming inquired of and checked up on her attorneys frequently. She sought replacement counsel reasonably promptly and reviewed her superior court filed personally. She timely employed counsel to resist the discretionary dismissal motion. Under these circumstances, we cannot say she was negligent in prosecuting her action." (*Fleming, supra*, at p. 74.)

Here, in contrast, appellants did not frequently check up on the status of the case, review the file, nor engage new counsel to resist the dismissal motions.

Appellants also cite *Seacall Development, Ltd. v. Santa Monica Rent Control Bd.* (1999) 73 Cal.App.4th 201 (*Seacall*). Like the cases previously discussed, *Seacall* involved a dismissal for failure to prosecute. (*Id.* at p. 204.) Both parties learned of the dismissal on January 22, 1998, and Seacall filed a motion for relief from the dismissal on equitable grounds on February 10, 1998. Thus, the motion was filed within three weeks of the date the party seeking relief learned of the dismissal. (*Ibid.*) The *Seacall* court acknowledged that factors to be considered in granting equitable relief in this circumstance include "the client's own conduct in pursuing and following up the case [citation], [and] whether the defendant would be prejudiced by allowing the case to proceed [citation]." (*Id.* at p. 205.) While the *Seacall* court noted that the moving party had failed to contact its attorney for two years, it also noted that prejudice to the defendant was nonexistent because a full administrative

13

proceeding had already taken place: "In this case the prejudice would be virtually nil because there are no witnesses who might disappear or whose memories might fade. The issues before the trial court on a petition for administrative mandamus are purely legal and governed by the administrative record." (*Id.* at p. 207.) After weighing the factors, including the moving party's abandonment by its attorney and the lack of prejudice to the defendant, the *Seacall* court ruled that the dismissal should be vacated. (*Id.* at p. 208.)

No administrative record exists in this case. As respondents point out, the fire and insurance investigation occurred in 2014 over six years ago. Thus, in contrast to *Seacall,* the trial court was entitled to weigh the prejudice factor in favor of respondents.

Finally, appellants point to *Aldrich, supra*, 170 Cal.App.3d 725, which presents some similarities to the present case, including that the plaintiff's case was dismissed on an unopposed motion for failure to respond to discovery. (*Id.* at pp. 731-732.) The plaintiff's motion to set aside the judgment of dismissal, made nearly three years later, was based on the grounds that "[plaintiff] had a meritorious case, that the judgment had been obtained by [defendants] by mistake which prevented [plaintiff] from presenting the case to the court, and that on the date the action was dismissed and the judgment entered . . . , [plaintiff] had no attorney of record by reason of the fact that [his attorney] had been suspended from the practice of law by the Supreme Court of California . . . ." (*Id.* at p. 732.)

The *Aldrich* court made it clear that the trial court's decision was based on its equitable power, not section 473, as "the trial court did not have legal jurisdiction, under section 473, to

14

vacate and set aside its order of dismissal which had been filed more than two years and nine months earlier." (*Aldrich, supra*, 170 Cal.App.3d at p. 735.) In discussing the equities, the *Aldrich* court noted that the plaintiff had filed declarations "which were sufficient to establish that he had a meritorious case." (*Id.* at p. 738.) The court also weighed the remaining equities, considered the passage of time, and noted that "where the aggrieved party makes a strong showing of diligence in seeking relief after discovery of the facts, and the other party is unable to show prejudice from the delay, the original negligence in allowing the default to be taken will be excused on a weak showing." (*Id.* at p. 740.) There, the plaintiff learned on March 16, 1984, that his case had been dismissed and on April 6, 1984, with a different attorney, filed a motion to vacate the order. The 21-day period was not unreasonable, and the defendants' "single declaration in opposition to [plaintiff's] motion did not set forth substantial evidence of missing witnesses, evidence destroyed, and the like, to establish prejudice." (*Ibid.*) Ultimately, the *Aldrich* court found that the trial court's actions and decision "fully comport[ed] with the standards for sound judicial discretion set forth in the opinions of our Supreme Court." (*Ibid.*)

The trial court's denial of relief in this matter also comported with the standards for sound judicial discretion. First, there was evidence of neglect on the part of appellants and that appellants may have been more concerned with the *Eden* case than the present matter. Further, there was evidence of prejudice to respondents, including loss of evidence concerning the fire and its damage, as well as potential loss of memory and witnesses. Unlike the *Aldrich* plaintiff, appellants here make no arguments concerning the merits of their case against

15

respondents.  Finally, the passage of over two months between the date they allegedly learned of the dismissal and the date they sought reinstatement of the case does not work in their favor. While legitimate arguments can be made on both sides, the trial court's balancing of the equities was well within the bounds of reason.  No abuse of discretion occurred.

## DISPOSITION

The order is affirmed.  Respondents are awarded their costs of appeal.

_____

CHAVEZ, J.

We concur:

_____

LUI, P. J.

_____

ASHMANN-GERST, J.